1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11   ANGELLA S. WEBB, individually, on          No.  2:13-cv-02006-MCE-AC
     behalf of all others similarly situated,
12   and on behalf of the general public,

13              Plaintiff,                        **MEMORANDUM AND ORDER**

14        v.

15   BANK OF AMERICA, N.A., and DOES
     1 through 20, inclusive,
16
                Defendants.
17

18        Through this action, Plaintiff Angella S. Webb ("Plaintiff") seeks relief from

19   Defendant Bank of America, N.A. ("Defendant") for violations of federal and state law

20   arising from the foreclosure proceedings instituted against Plaintiff's real property.

21   Specifically, Plaintiff alleges the following claims: (1) breach of contract; (2) violations of

22   the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692; (3) violations of the

23   Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code § 1788;

24   and (4) unlawful, unfair, and fraudulent business practices, Cal. Bus. & Prof. Code

25   § 17200.  Compl., Sept. 25, 2013, ECF No. 1.  Presently before the Court is Defendant's

26   Motion to Dismiss for failure to state a claim upon which relief can be granted pursuant

27   to Federal Rule of Civil Procedure 12(b)(6)[1] ("Motion").  Mot., Nov. 8, 2013, ECF No. 11.

28   _____
     [1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless

1    Plaintiff filed a timely opposition.  Opp'n, Dec. 5, 2012, ECF No. 13.  For the reasons set
2    forth below, Defendant's Motion is granted in part and denied in part.[2]

3

4                                    **BACKGROUND**[3]

5

6        **A.    Individual Allegations**

7

8        Plaintiff purchased her home, located at 5600 Broadway, Sacramento, California,
9    in 2002.  In 2006, Plaintiff refinanced her mortgage with Countrywide.  Plaintiff's loan
10   servicing was later transferred to Defendant.  Around July 2009, Plaintiff fell behind on
11   her mortgage payments, and in September of 2009, she applied to Defendant for a
12   mortgage modification.  Defendant declined to offer Plaintiff a modification, and around
13   December 2011, Defendant transferred the loan servicing to Specialized Loan Servicing,
14   LLC ("SLS").  Thereafter, Plaintiff applied for a mortgage modification with SLS.  SLS
15   offered Plaintiff a trial mortgage modification in March 2012.  The trial modification would
16   run from March to May 2012, and required monthly payments of $1,213.97.  Plaintiff
17   made the three monthly payments.  In June 2012, SLS offered Plaintiff a permanent
18   mortgage modification ("Modification Agreement").  The Modification Agreement, which
19   became effective June 27, 2012, reduced Plaintiff's interest rate to 2.000%; changed the
20   maturity date of the loan to December 31, 2036; made Plaintiff's principal and interest
21   payments $1,047.80 per month; and Plaintiff's loan balance increased from $258,469.00
22   to $346,007.81.  Plaintiff accepted the Modification Agreement, and continued to make
23   all payments owed to SLS through July 2013.
24   Plaintiff states that, with escrow included, the full monthly payments started at $1,416.23

25   ───────────────────────────────────────────────
     otherwise noted.

26        [2] Because oral argument would not be of material assistance, the Court ordered this matter
     submitted on the briefs.  E.D. Cal. Local R. 230(g).
27
          [3] The following recitation of facts is taken, sometimes verbatim, from Plaintiff's Complaint.  ECF
28   No. 1.

                                          2

1  due to a back-owed amount of escrow in August, September, October, November, and
2  December 2012.  Then, in February 2013, the full monthly payment was reduced to
3  $1,268.98 because the escrow arrearage had been paid off.

4      In July 2013, SLS informed Plaintiff that servicing of her mortgage would be
5  transferred to Defendant, effective July 16, 2013, and thus all future mortgage payments
6  would be made to Bank of America.  On July 25, 2013, Plaintiff contacted Defendant
7  regarding this transfer, and requested information about future payments.  Several of
8  Defendant's representatives informed Plaintiff that she did not have an account with
9  Bank of America and her house was in foreclosure proceedings.  Finally, Plaintiff spoke
10 with Defendant's representative "Francis" who stated that she would research Plaintiff's
11 concerns.  Throughout the rest of July, Plaintiff spoke with numerous representatives of
12 Defendant, all of whom informed Plaintiff that they could not provide her with information
13 about the transfer.  Then, in late July, Plaintiff received a letter from Defendant, stating
14 that as of July 16, 2013, Plaintiff's loan would have a new loan number, and payments
15 must be made to Defendant.  That letter stated the proper payment amount of
16 $1,268.98.  In a separate letter, Defendant stated that Plaintiff owed a total of
17 $343,805.65 as of July 22, 2013, although the correct amount as of that date was
18 $339,776.09.

19     On August 1, 2013, Plaintiff made an electronic payment in the amount of
20 $1,268.98—the fully monthly payment required under the Modification Agreement.  On
21 August 6, 2013, Plaintiff contact Defendant to ensure that Defendant had received her
22 payment.  Plaintiff spoke to a representative who informed her that Defendant had no
23 records from SLS, and requested that Plaintiff send proof of her loan modification via
24 fax.  Plaintiff sent all of the modification documents, and proof of the payments she
25 made for the prior year.

26 ///
27 ///
28 ///

3

1   On August 13, 2013, Plaintiff contacted Defendant to ensure the documents were

2   received.  A different representative of Defendant informed Plaintiff that the documents

3   were received, and that the error was being corrected.  This representative stated that

4   he would call Plaintiff the next morning to update her, but failed to do so.

5          The following day, Plaintiff discovered that her August mortgage payment had

6   been returned.  Plaintiff called Defendant and spoke to yet another representative, who

7   informed Plaintiff that the error was being corrected, but resolution of the issue could

8   take up to thirty days.  This representative also informed Plaintiff that her payment had

9   been returned because it was a "partial payment," as the mortgage payment amount

10  was $2,109.90.  As set forth above, Plaintiff's payment amount, pursuant to the

11  Modification Agreement, had been reduced from $2,109.90.

12         Despite Plaintiff's timely payment of each payment due under her modified loan,

13  Defendant now treats Plaintiff's loan as if it was in default.  Defendant has also engaged

14  in a number of collection communications with Plaintiff, demanding payments not

15  actually owed under the Modification Agreement.

16

17         **B.      Class Allegations**

18

19         Plaintiff proposes a class ("the Class") comprised of all California residents who,

20  since 2009, were offered, accepted, and performed under the terms of permanent loan

21  modifications, which modifications Defendant later failed to honor after transfer from

22  another services.  Plaintiff states that the Class is so numerous that joinder of all

23  members individually, in one action or otherwise, is impractical.  Plaintiff also states that

24  there are questions of law and fact that are common to the class, which predominate

25  over questions affecting only individual class members.

26  ///

27  ///

28  ///

1  These questions include: (1) whether Defendant breached its promises and contracts to

2  permanently modify loans; (2) whether Defendant falsely denied the very existence of

3  the loan modifications; (3) whether Defendant's conduct constituted a violation of the

4  FDCPA and/or the Rosenthal Act; and (4) whether Defendant's conduct was illegal or

5  unfair.  Judicial determination of these common issues would be more efficient and

6  economical as a class action than individual determinations.

7  Plaintiff states that she is willing to undertake the responsibilities of acting in a

8  representative capacity on behalf of the Class, and will fairly and adequately protect the

9  Class's interests.  Plaintiff further states she has no interest that directly conflicts with the

10  interests of the Class, and that she has retained counsel experienced in class action

11  litigation to vigorously protect the rights of the Class.

12  Finally, Plaintiff states that her claims are typical of the Class, as she was

13  deceived and damaged by Defendant's conduct.

14

15  **STANDARD**

16

17  On a motion to dismiss for failure to state a claim under Federal Rule of Civil

18  Procedure 12(b)(6), all allegations of material fact must be accepted as true and

19  construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins.

20  Co., 80 F.3d 336,337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and plain

21  statement of the claim showing that the pleader is entitled to relief" in order to "give the

22  defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell

23  Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41,

24  47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require

25  detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of

26  his entitlement to relief requires more than labels and conclusions, and a formulaic

27  recitation of the elements of a cause of action will not do."  Id. (internal citations and

28  quotations omitted).  A court is not required to accept as true a "legal conclusion

5

1   couched as a factual allegation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009)

2   (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a

3   right to relief above the speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles

4   Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)

5   (stating that the pleading must contain something more than "a statement of facts that

6   merely creates a suspicion [of] a legally cognizable right of action.")).

7          Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket

8   assertion, of entitlement to relief."  Twombly, 550 U.S. at 556 n.3 (internal citations and

9   quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard

10  to see how a claimant could satisfy the requirements of providing not only 'fair notice' of

11  the nature of the claim, but also 'grounds' on which the claim rests."  Id. (citing 5 Charles

12  Alan Wright & Arthur R. Miller, supra, at § 1202).  A pleading must contain "only enough

13  facts to state a claim to relief that is plausible on its face."  Id. at 570.  If the "plaintiffs . . .

14  have not nudged their claims across the line from conceivable to plausible, their

15  complaint must be dismissed."  Id.  However, "[a] well-pleaded complaint may proceed

16  even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a

17  recovery is very remote and unlikely.'"  Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S.

18  232, 236 (1974)).

19         A court granting a motion to dismiss a complaint must then decide whether to

20  grant leave to amend.  Leave to amend should be "freely given" where there is no

21  "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice

22  to the opposing party by virtue of allowance of the amendment, [or] futility of the

23  amendment . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.

24  Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to

25  be considered when deciding whether to grant leave to amend).

26  ///

27  ///

28  ///

6

1  Not all of these factors merit equal weight.  Rather, "the consideration of prejudice to the

2  opposing party . . . carries the greatest weight."  Id. (citing DCD Programs, Ltd. v.

3  Leighton, 833 F.2d 183, 185 (9th Cir. 1987)).  Dismissal without leave to amend is

4  proper only if it is clear that "the complaint could not be saved by any amendment."  Intri-

5  Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou

6  Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866

7  F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of

8  the complaint . . . constitutes an exercise in futility . . . .")).

9

10                                      **ANALYSIS**

11

12      Defendant moves to dismiss Plaintiff's second cause of action for violation of the

13  FDCPA, third cause of action for violation of the Rosenthal Act, and portions of Plaintiff's

14  fourth cause of action alleging unlawful and fraudulent business activity in violation of

15  California's Business and Professions Code § 17200 ("UCL").  Each claim is discussed

16  in turn, below.

17

18      **A.      Fair Debt Collection Practices Act**

19

20      Plaintiff's second cause of action alleges Defendant violated the FDCPA by

21  collecting debts, or attempting to collect debts, in false, deceptive, or misleading ways,

22  and by using unfair and unconscionable means.  Compl. at 10.  Defendant moves to

23  dismiss this claim on the grounds that Defendant is not a debt collector within the

24  meaning of the FDCPA, and the monies owed by Plaintiff are not "debts" within the

25  meaning of the statute.

26  ///

27  ///

28  ///

1   The FDCPA was enacted "to eliminate abusive debt collection practices by debt

2   collectors, to insure that those debt collectors who refrain from using abusive debt

3   collection practices are not competitively disadvantaged, and to promote consistent

4   State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).

5   To effectuate this purpose, the FDCPA "prohibits a 'debt collector' from making false or

6   misleading representations and from engaging in various abusive and unfair practices.

7   To be held liable for violation of the FDCPA, a defendant must—as a threshold

8   requirement—fall within the Act's definition of "debt collector."  Izenberg v. ETS Servs.,

9   LLC, 589 F. Supp. 2d 1193, 1198-99 (C.D. Cal. 2008) (citing Heintz v. Jenkins, 514 U.S.

10  291, 294 (1995); Romine v. Diversified Collection Servs., 155 F.3d 1142, 1146 (9th Cir.

11  1998)).

12       Under the FDCPA, a debt collector is "any person who uses any instrumentality of

13  interstate commerce or the mails in any business the principal purpose of which is the

14  collection of any debts, or who regularly collects or attempts to collect, directly or

15  indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C.

16  § 1692a(6).  "While the Ninth Circuit has not specifically addressed whether mortgagees

17  and their assignees are 'debt collectors' under the FDCPA, courts within this Circuit,"

18  including this one, "have recognized that a debt collector does not include the

19  consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long

20  as the debt was not in default at the time it was assigned."  Brashears v. Bank of Am.

21  Home Loans, No. CV 12-6760 FMO (JCGx), 2013 WL 5741832, *4 (C.D. Cal. Oct. 22,

22  2013) (listing numerous cases from Central, Northern, Southern, and Eastern Districts of

23  California); Tina v. Countrywide Home Loans, Inc., 2008 WL 4790906 at *7 n.2 (S.D.

24  Cal. Oct.30, 2008) (holding that "Countrywide is not a 'debt collector' as defined under

25  the FDCPA" because "the . . . FDCPA defines 'debt collector' as one who collects

26  consumer debts owed to another.  Countrywide's conduct was directed to collecting its

27  own debts.").

28  ///

8

1 | Accordingly, Plaintiff has failed to allege that Defendant is a "debt collector" within

2 | the meaning of the FDCPA, and therefore has failed to state a claim for relief under that

3 | statute.  Defendant's motion to dismiss this cause of action is therefore granted.

4 |

5 | **B.    Rosenthal Act**

6 |

7 | Plaintiff's third cause of action alleges violations of the Rosenthal Act.  Defendant

8 | moves to dismiss this claim on the sole ground that it is not a "debt collector" under the

9 | Rosenthal Act.  Mot. at 14.  Defendant contends that "Plaintiff's claim under the

10 | Rosenthal Act fails with her FDCPA claim," as there is "substantial overlap between the

11 | provisions of the Rosenthal Act and the FDCPA . . . ."  Id.

12 | The purpose of the Rosenthal Act is "to prohibit debt collectors from engaging in

13 | unfair or deceptive acts or practices in the collection of consumer debts and to require

14 | debtors to act fairly in entering into and honoring such debts."  Cal. Civ. Code

15 | § 1788.1(b).  To achieve this end, the Rosenthal Act "prohibits a host of unfair and

16 | oppressive methods of collecting debt, but to be liable . . . a defendant must fall under its

17 | definition of 'debt collector.'"  Izenberg, 589 F. Supp. 2d at 1199.

18 | The Rosenthal Act defines "debt" as "money, property, or their equivalent which is

19 | due or owing or alleged to be due or owing from a natural person to another person."

20 | Cal. Civ. Code § 1788.2(d).  The Rosenthal Act defines a "debt collector" as "any person

21 | who, in the ordinary course of business, regularly, on behalf of himself or herself or

22 | others, engages in debt collection."  Id. § 1788.2(c).

23 | ///

24 | ///

25 | ///

26 | ///

27 | ///

28 | ///

1   "A debt collector violates the act, e.g., when it engages in threats, use of profane

2   language, or harassment; when it places telephone calls without disclosing the caller's

3   identity; when it communicates to a third party that a debtor has engaged in conduct,

4   other than failure to pay a consumer debt, that the debt collector knows or has reason to

5   believe will defame the debtor; and when it makes a false representation hat a consumer

6   debt may be increased by the addition of fees or other charges if such fees or charges

7   may not be lawfully added to the existing debt." Walters v. Fidelity Mortg. of Cal., 730 F.

8   Supp. 2d 1185, 1203 (E.D. Cal. 2010) (citing Cal. Civ. Code §§ 1788.10; 1788.11(a), (b),

9   (e); 1788.13(e)).

10          As Defendant points out, Mot. at 15, "[n]umerous courts within the Ninth Circuit,"

11   including this Court, "have concluded that foreclosure pursuant to a deed of trust is not

12   the collection of a debt within the meaning of the [Rosenthal Act]," Grill v. BAC Home

13   Loans Serv. LP, No. 10-CV-03057-FCD/GGH, 2011 WL 127891 at *19 (E.D. Cal. Jan.

14   14, 2011) (citing six California district court cases for this proposition) (internal citations

15   omitted).  However, "a number of courts have recognized [that] the definition of 'debt

16   collector' is broader under the Rosenthal Act than it is under the FDCPA, as the latter

17   excludes creditors collecting on their own debts." Reyes v. Wells Fargo Bank, N.A., No.

18   C-10-01667 JCS, 2011 WL 30759, *19 (N.D. Cal. Jan. 3, 2011).  Thus, while "numerous

19   courts have held that the mere allegation that a defendant foreclosed on a deed of trust

20   does not implicate the Rosenthal Act[,] [w]here the claim arises out of debt collection

21   activities [beyond the scope of the ordinary foreclosure process,' . . . a remedy may be

22   available under the Rosenthal Act." Id. (citations omitted).

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1 | Citing to <u>Reyes</u>, the Ninth Circuit recently stated:

> Wells Fargo conceded it is a debt collector under the meaning of the Rosenthal Act.  Wells Fargo contends, however, that it was not engaged in debt collection activities when it offered the TPP with its concomitant demand for trial payments.  The district court, while dismissing the claim on other grounds, correctly recognized that Wells Fargo was engaged in debt collection.  The TPP was more than an information circulation.  This is the same conclusion reached by other district courts.

<u>Corvello v. Wells Fargo Bank, N.A.</u>, 728 F.3d 878, 885 (9th Cir. Aug. 8, 2013) (citing <u>In re Bank of Am. Home Affordable Modification Program (HAMP) Contract Litig.</u>, No. 10-MD-02193-RWZ, 2011 WL 2637222, at *6 (D. Mass. July 6, 2011); <u>Reyes</u>, 2011 WL 30759, at *20) (applying Rosenthal Act in context of bank's collection activities concerning a HAMP mortgage modification).  Accordingly, the Court departs from its prior orders, and finds that Defendant is not categorically excluded as a "debt collector" under the Rosenthal Act.

The Court thus turns to whether Plaintiff has alleged facts showing that Defendant is a "debt collector" under the Rosenthal Act sufficient to survive Defendant's Motion. Plaintiff alleges that Defendant regularly sent mortgage bills to Plaintiff and Plaintiff made her mortgage payments to Defendant.  Compl. at 11.  Plaintiff also alleges that Defendant made demands for payment by sending letters, making telephone calls, and made other attempts to collect mortgage payments.  Indeed, the gravamen of Plaintiff's Complaint is that Defendant engaged in a pattern of improper conduct in the course of servicing her loan, including telling Plaintiff that she is in default when she is not, which may ultimately lead to foreclosure on her home.

///

///

///

///

///

///

1    The Rosenthal Act's "definition of 'debt collector' broadly encompasses 'any

2  person' who regularly engages in debt collection." <u>Walters</u>, 730 F. Supp. 2d at 1203

3  (quoting Cal. Civ. Code § 1788.2(c)).  Plaintiff's allegations are sufficient to show that

4  Defendant is a debt collector as that term is defined by the Rosenthal Act, and to show

5  that Defendant's debt collection activities fall outside of the normal foreclosure process,

6  as is required to proceed with a cause of action under the Rosenthal Act.

7    Accordingly, Defendant's motion to dismiss this cause of action is DENIED.

8

9    **C.    Unfair Competition Law**

10

11    Plaintiffs' fourth cause of action asserts that Defendant violated California's Unfair

12  Competition Law ("UCL").  Cal. Bus. & Prof. Code §§ 17200-17210.  Section 17200

13  defines unfair competition as "any unlawful, unfair or fraudulent business act or practice."

14  This section establishes a private right of action to remedy such unfair competition.  <u>See</u>

15  <u>Webb v. Smart Document Solutions, LLC</u>, 499 F.3d 1078, 1082 (9th Cir. 2007).

16  Section 17200 establishes three separate varieties of unfair competition: acts or

17  practices which are unlawful, or unfair, or fraudulent.  <u>Cal-Tech Commc'ns., Inc. v. L.A.</u>

18  <u>Cellular Tel. Co.</u>, 20 Cal. 4th 163, 180 (1999).  Defendant moves to dismiss the portions

19  of Plaintiff's fourth cause of action that allege unlawful and fraudulent business practices.

20

21    **1.    Unlawful Business Practices**

22

23    In proscribing "unlawful business practices, section 17200 'borrows' violations of

24  other laws and treats them as unlawful practices that [section 17200] makes

25  independently actionable." <u>Durrell v. Sharp Healthcare</u>, 108 Cal. App. 4th 1350, 1361

26  (2010).

27  ///

28  ///

1   Thus, "unlawful" practices are practices "forbidden by law, be it civil or criminal, federal,

2   state, or municipal, statutory, regulation, or court-made." Saunders v. Sup. Ct., 27 Cal.

3   App. 4th 832, 838-39 (1994) (citing People v. McKale, 25 Cal.3d 626, 632 (1979)).  To

4   state a cause of action based on an "unlawful" business act or practice under the UCL, a

5   plaintiff must allege facts sufficient to show a violation of some underlying law. McKale,

6   25 Cal.3d at 635.

7          Defendant contends that Plaintiff's cause of action for unlawful business practices

8   fails because it is premised on Plaintiff's causes of action under the FDCPA and the

9   Rosenthal Act, which Defendant asserts must also fail.  However, as set forth above,

10  although Plaintiff's FDCPA cause of action is dismissed for failure to state a claim,

11  Plaintiff's cause of action for violation of the Rosenthal Act survives. See supra.

12  Accordingly, Plaintiff's cause of action for unlawful business practices also survives to

13  the extent it is derivative of the Rosenthal Act cause of action.  By the same token,

14  however, Plaintiff's cause of action for unlawful business practices based on violations of

15  the FDCPA fails.

16

17                  **2.      Fraudulent Business Practices**

18

19          A cause of action for fraudulent business acts under section 17200 is distinct from

20  a common law fraud claim.  Under section 17200, a plaintiff does not need to show

21  reliance to state a claim for fraudulent business acts. Klein v. Earth Elements, 59 Cal.

22  App. 4th 965, 970 (1997).  A plaintiff need only allege that the public is likely to be

23  deceived by the alleged business acts. Id.  However, all claims alleging fraudulent

24  business practices under section 17200 are subject to the heightened pleading standard

25  of Rule 9(b). See, e.g., Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009).

26  To meet the heightened pleading standard of Rule 9(b), a plaintiff must plead facts as to

27  the "who, what, when, where, and how" of the alleged fraud. Id. (quoting Vess v. Ciba-

28  Geiby Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003)).

1   Defendant contends that Plaintiff's claim for fraudulent business practices fails
2   "because Plaintiff pleads no fraudulent conduct to sustain" the claim.  Mot. at 17.
3   Defendant is correct that Plaintiff's fraud allegations do not meet the heightened
4   pleading standard of Rule 9(b).  As Defendant points out, Plaintiff makes only a "passing
5   mention" of fraud in the Complaint.  Moreover, Plaintiff does not appear to challenge the
6   motion to dismiss as to this portion of the claim.  Because Plaintiff fails to meet the
7   pleading standard for the allegedly fraudulent conduct, Defendant's motion to dismiss
8   the "fraudulent" prong of Plaintiff's UCL cause of action is granted.

9

10   **CONCLUSION**

11

12   For the reasons set forth above, Defendant's Motion to Dismiss, ECF No. 11, is
13   GRANTED IN PART and DENIED IN PART.  Specifically, IT IS HEREBY ORDERED
14   THAT:

15   1.   Defendant's Motion to Dismiss Plaintiff's second cause of action is
16        GRANTED with leave to amend;
17   2.   Defendant's Motion to Dismiss Plaintiff's third cause of action is DENIED;
18   3.   Defendant's Motion to Dismiss Plaintiff's fourth cause of action is DENIED
19        as to Plaintiff's claim for "unlawful" business practices based on violations
20        of the Rosenthal Act, GRANTED with leave to amend as to Plaintiff's claim
21        for "unlawful" business practices based on violations of the FDCPA, and
22        GRANTED with leave to amend as to Plaintiff's claim for "fraudulent"
23        business practices.

24   ///
25   ///
26   ///
27   ///
28   ///

14

1    Not later than thirty (30) days following the date this Memorandum and Order is

2    electronically filed, Plaintiff may (but is not required to) file an amended complaint.  If no

3    amended complaint is filed within said thirty (30) day period, without further notice to the

4    parties, the causes of action dismissed by virtue of this Memorandum and Order will be

5    dismissed with prejudice.

6    IT IS SO ORDERED.

7    Dated:  December 18, 2013

8

9

10   _____
     MORRISON C. ENGLAND, JR., CHIEF JUDGE
11   UNITED STATES DISTRICT COURT

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28