Daniel J. Mulligan, SBN 103129
JENKINS MULLIGAN & GABRIEL LLP
10085 Carroll Canyon Road, Ste. 210
San Diego, CA 92131
Telephone:      (415) 982-8500
Facsimile:      (415) 982-8515
Email:          dan@jmglawoffices.com
*Designated as Counsel for Service*

Eric Andrew Mercer, SBN 248707
LAW OFFICE OF ERIC ANDREW MERCER
770 L Street, Suite 950
Sacramento, CA 95814
Telephone:      (916) 361-6022
Facsimile:      (916) 361-6023
Email:          mercerlegal@me.com

Attorneys for Plaintiff ANGELLA S. WEBB;
and the putative class.

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| ANGELLA S. WEBB, individually, on behalf of all others similarly situated, and on behalf of the general public, <br><br> Plaintiffs, <br><br> v. <br><br> BANK OF AMERICA, N.A.; and DOES 1 through 20 inclusive, <br><br> Defendants. | Case No. 2:13-CV-02006-MCE-AC <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT FOR:** <br><br> 1. Breach of Contract – Modification Agreement <br><br> 2. Violations of the Rosenthal Fair Debt Collection Practices Act, California Civil Code § 1788 <br><br> 3. Unfair Business Practices, California Business and Professions Code § 17200 <br><br> DEMAND FOR JURY TRIAL |

1    Plaintiff, ANGELLA S. WEBB, individually, and on behalf of all others similarly

2    situated, brings this action against defendants, BANK OF AMERICA, N.A and DOES 1 through

3    20 inclusive, (individually and collectively, "Defendants"), and allege, on information and belief

4    (except as to those allegations relating to Plaintiff herself, which are asserted on personal

5    knowledge), as follows:

6                                   **I.  JURISDICTION**

7    1.    This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

8                                      **II.  VENUE**

9    2.    Venue is proper in the Eastern District of California pursuant to 28 U.S.C. §

10   1391(b)(2) in that the unlawful conduct that gives rise to these claims occurred within the Eastern

11   District of California.  The Sacramento Division is the proper division in that the real property

12   that is the subject of this action is located in Sacramento County, California.

13                                  **III.  INTRODUCTION**

14   3.    This case challenges Defendants' outrageous conduct in servicing the home loan

15   of Plaintiff, Angella S. Webb ("Plaintiff").   Ms. Webb fell behind on her mortgage, and applied

16   for a modification through her servicer at the time, Specialized Loan Servicing ("SLS").  SLS

17   offered Ms. Webb a trial period plan, which she successfully completed.  SLS then offered Ms.

18   Webb a permanent loan modification, which she timely accepted.   SLS accepted payments on the

19   modified mortgage for 12 months, then transferred the servicing to Bank of America.  After the

20   transfer of servicing, Bank of America returned Ms. Webb's August 2013 payment and refused to

21   honor the new payment amount under the permanent modification. Now, Bank of America

22   demands payment of over $2,109.90 per month when Ms. Webb's payment under the permanent

23   modification is $1,268.98 per month.  Bank of America has threatened to initiate foreclosure

24   proceedings and report negative information to the credit bureaus after 30 days. It has also

25   demanded payment be made in the form of certified funds which is not a requirement of the loan,

26   as modified.

27   4.    Failure to honor permanent modifications after a transfer of servicing is a

28   widespread problem.  On January 17, 2013, the Consumer Protection Financial Bureau ("CFPB")

issued serving rules will require servicers to maintain policies and procedures that are reasonably designed to achieve the objectives of facilitating the transfer of information during mortgage servicing transfers.[1]  Specifically, the CFPB states that:

> A transferee servicer must have policies and procedures reasonably designed to ensure, in connection with a servicing transfer, that the transferee servicer receives information regarding any loss mitigation discussions with a borrower, including any copies of loss mitigation agreements. Further, the transferee servicer's policies and procedures must address obtaining any such missing information or documents from a transferor servicer before attempting to obtain such information from a borrower. For example, assume a servicer receives documents or information from a transferor servicer indicating that a borrower has made payments consistent with a trial or permanent loan modification but has not received information about the existence of a trial or permanent loan modification agreement. The servicer must have policies and procedures reasonably designed to identify whether any such loan modification agreement exists with the transferor servicer and to obtain any such agreement from the transferor servicer.

5.  Despite the CFPB's clear guidance on this issue, Bank of America, as a matter of common practice, continues to fail to ensure it is properly applying, after transfer, payments due under an applicable loan modification agreement or other applicable payment modification agreements and fails to  properly consider applicable loan modification or forbearance agreements before demanding or collecting amounts due.

6.  This action seeks injunctive relief to stop any foreclosure proceedings, any negative credit reporting, and specific performance of the modification contract, and actual and statutory damages for unfair debt collection practices; and unlawfully unfair and bad faith conduct in the handling of homeowners' loans serviced by Bank of America.

## IV.  PARTIES

7.  Plaintiff Angella S. Webb is an individual and at all relevant times herein was a resident of Sacramento County.  She is domiciled in and is a citizen of California.

8.  Defendant Bank of America, N.A., the current servicer of Ms. Webb's mortgage, is a mortgage lender and servicer with headquarters at 101 Tryon Street, Charlotte, North Carolina.  It is a wholly owned subsidiary of Bank of America Corporation, and successor by

---

[1] *available at http://files.consumerfinance.gov/f/201302_cfpb_bulletin-on-servicing-transfers.pdf*

merger to BAC Home Loans Servicing LP.  Bank of America, N.A. is a citizen of North Carolina because its articles of association establish that location as its main office.

9.     Plaintiff is ignorant of the names and capacity of Defendants herein sued as DOES 1-20 inclusive, and therefore sues these Defendants by such fictitious names.  When the true names and capacities of these Defendants become known, Plaintiff will amend this Complaint to include their true names and capacities and, if necessary, will seek leave to amend to add additional allegations against them.  Plaintiff is informed and believes, and so allege, that each of the fictitiously named Defendants is responsible in some manner for the occurrences alleged in the Complaint, and that Plaintiff's damages were proximately caused by their conduct.

10.     Plaintiff is informed and believes, and on that basis allege, that at all times herein mentioned each of the Defendants was an agent, servant, employee, and/or joint venturer of each of the remaining Defendants, and was at all times acting within the course and scope of such agency, service, employment, and/or joint venture, and each Defendant has ratified, approved, and authorized the acts of each of the remaining Defendants with full knowledge of said facts.

11.     Defendants, and each of them, aided and abetted, encouraged, and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiff, as alleged herein. In taking action, as alleged herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of its/his/her primary wrongdoing and realized that its/his/her conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

12.     There is a unity of interest between Defendants, and each acts as the alter ego of the other.

**V.  STATEMENT OF FACTS**

13.     Ms. Webb owns and lives at her home at 5600 Broadway in Sacramento, California.

14.     Ms. Webb bought her home in 2002. In 2006, she refinanced the loan with Countrywide.  Her servicing was eventually transferred to Bank of America.

15.     Ms. Webb fell behind on her mortgage payments in or about July, 2009.  She applied to her mortgage servicer, defendant Bank of America, for a mortgage modification in or about September, 2009.  Bank of America refused to offer a modification and transferred servicing to Specialized Loan Servicing, LLC ("SLS") in or about December 2011.

16.     In or about January 2012, Ms. Webb applied for a mortgage modification with SLS.

17.     By letter dated March 15, 2012, SLS offered  Ms. Webb a trial mortgage modification, to run from March to May, 2012, which required monthly trial period plan payments of $1,213.97.  Ms. Webb timely made the three monthly payments.

18.     By letter dated June 27, 2012 SLS offered Ms. Webb a permanent modification ("Modification Agreement").  The cover letter of the package of modification documents explains the terms of the modification.  A true and correct copy of cover letter dated June 27, 2012 ("Cover Letter") is attached hereto as **Exhibit 1**.   The Cover Letter explains some of the terms of the modification, and tracks the terms of the Modification Agreement, a true and correct copy of which is attached hereto as **Exhibit 2**.

19.     The Modification Agreement states it is effective as of June 27, 2012 and reduces the interest rate to 2.000% and makes the maturity date of loan December 31, 2036.   The new principal and interest payments are $1,047.80 per month.

20.     The new loan balance of the Modification Agreement increased to $346,007.81, from a previous balance of $258,469.00, to include amounts capitalized, escrow advances, corporate advances, and any unpaid interest.  As such, the Modification Agreement calls for payments of interest on the unpaid interested that form part of the new principal balance.

21.     Ms. Webb accepted SLS's offer of a permanent loan modification by signing the Modification Agreement through a private "SmartSigning Room" as requested by SLS. The permanent agreement alters the terms of the mortgage for the remaining life of the loan.

22.     With escrow included, the full monthly payment started at $1,416.23 due to a back-owed amount of escrow in August, September, October, November and December 2012.  In January 2013, Ms. Webb made another payment of $1,416.23.

23. In February 2013, the fully monthly payment was reduced to $1,268.98 because the escrow arrearage had been paid off. From February to July 2013, Ms. Webb made payments of $1,268.98. All were accepted by SLS.

24. By letter dated July 1, 2013 SLS informed Ms. Webb that the servicing of her mortgage loan would be transferred to Bank of America effective July 16, 2013 and that future payments must be made to Bank of America.

25. On or about July 25, 2013, Ms. Webb contacted Bank of America regarding the transfer of servicing and to request information regarding future payments. The first few Bank of America representatives she spoke to that day stated that she did not have an account with Bank of America and that her house was in foreclosure proceedings. Ms. Webb eventually spoke to Bank of America representative "Francis" who stated that she would research Ms. Webb's concerns.

26. On or about July 26, 2013, Ms. Webb spoke to Bank of America representative Taylor Jenkins about the transfer of her mortgage servicing to Bank of America but Ms. Jenkins could provide no information.

27. On or about July 27, 2013, Ms. Webb spoke with Bank of America representative "Elizabeth" and then her supervisor "Vaira" who could provide Ms. Webb no further information.

28. On or about July 29, 2013, Ms. Webb spoke with Bank of America representatives "Jerrod," "Chris," and "Tamishany" none of whom could provide Ms. Webb assistance.

29. Eventually, on or about July 29, 2013, Ms. Webb received a letter dated July 24, 2013 from Bank of America which informed Ms. Webb that effective July 16, 2013 her loan would have a new loan number and payments must be made to Bank of America. The letter notes that the proper payment amount is $1,268.98.

30. By separate letter dated July 24, 2013 Bank of America claimed that Ms. Webb owed at total of $343,805.65 as of July 22, 2013. Ms. Webb had made all timely payments under the modification and the amount due as of July 1, 2013 was actually $339,776.09.

31. On August 1, 2013, Ms. Webb made an electronic payment in the amount of $1,268.98.

32.     On or about August 6, 2013, Ms. Webb contacted Bank of America to ensure it had received the payment.  Ms. Webb spoke to "Shanee" who informed her that Bank of America has no records from SLS.  "Shanee" requested that Ms. Webb send proof of the modification via facsimile to Bank of America.  Ms. Webb sent all of the modification documents and proof of payments by her for the prior year.

33.     On or about August 13, 2013, Ms. Webb contacted Bank of America to ensure the permanent modification documents were received.  Bank of America representative "Ezell Williams" informed Ms. Webb that the documents were received and that the error was in the process of being corrected.  He stated that he would call Ms. Webb by 10:00 a.m. the next morning with an update.  He never called.

34.     On August 14, 2013, Ms. Webb discovered that her August mortgage payment had been returned.  She called Bank of America and spoke to "Deanna" who told Ms. Webb that the error was in the process of being corrected, but that the resolution would take up to 30 days.  She further informed Ms. Webb that her August payment had been returned because it was considered a partial payment because the mortgage payment was $2,109.90.  As detailed above, Ms. Webb's mortgage payment is not $2,109.

35.     Despite  Ms. Webb's  timely payments of every payment due on her modified loan, Bank of America now treats the loan as if it were in default.

36.     Since August 14, 2013, Bank of America has engaged in a number of collection communications demanding payments not owed under the Modification Agreement.

37.     Because of Bank of America's outrageous conduct in treating the loan as in default while Plaintiff is current on her mortgage, Plaintiff has suffered damages.

## VI.   CLASS ALLEGATIONS

38.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The "Class" is defined as follows:

        (a)     All California residents who, since 2009, were offered, accepted and performed under the terms of permanent loan modifications, which modifications Bank of America later failed to honor after transfer from another servicer;

(b)     The Class excludes any of Bank of America's directors, officers, managers and agents.

39.     Plaintiff reserves the right to modify or amend the Class definition before the Court determines whether certification is appropriate.

40.     Plaintiff and Class members are so numerous that joinder of all members individually, in one action or otherwise is impractical.

41.     Classwide common questions of law and fact exist and predominate over questions affecting only individual class members.  Common questions include, but are not limited to:

(a)     Whether Defendants breached its promises and contracts to permanently modify loans;

(b)     Whether Bank of America falsely denied the very existence of the loan modifications;

(c)     Whether Bank of America's conduct constituted a violation of the Rosenthal Fair Debt Collection Practices Act; and

(d)     Whether Bank of America's conduct was illegal or unfair.

42.     Plaintiff understands and is willing to undertake the responsibilities of acting in a representative capacity on behalf of the proposed Class.  Plaintiff will fairly and adequately protect the interests of the Class and have no inters that directly conflict with the interests of the Class  Plaintiff have retained counsel experienced in complex class litigation, and will prosecute this action vigorously.

43.     Plaintiff's claims are typical of the claims of the Class because they have been deceived an damaged by Defendants' misconduct and breach

44.     Judicial determination so the common legal and factual issues in this case would be for more efficient and economical as a class action than individual determinations.

45.     Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its being maintained as a class action.  Plaintiff is not aware of any conflict between themselves and any other member of the class.

///

FIRST AMENDED CLASS ACTION COMPLAINT

## VII.  CLAIMS

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT
### (Against All Defendants)

46.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

47.    Plaintiff had a valid contract modifying her mortgage as of June 27, 2012, which she had  accepted by signing and notarizing the modification offer, returning it as instructed, and performing by making payments under the modification.

48.    Plaintiff performed all conditions precedent to the contract.  Plaintiff performed all of the obligations under the Modification Agreement.   The Modification Agreement obliged Bank of America to accept her timely payments  and to credit them accordingly.

49.    Bank of America breached the Modification Agreement by failing to properly credit payments.   Bank of America has breached the Modification Agreement by attempting to collect and collecting amounts that were not due and owing under the Modification Agreement, including, without limitation, past due payments, interest, late fees, and other default-related fees. Bank of America has breached the Modification Agreement by converting the terms of the Plaintiff's loan back to the terms of the original Note and Deed of Trust when Plaintiff were making the payments due under the Modification Agreement.

50.    Bank of America's breach of the Modification Agreement has caused Plaintiff, and the Class, damage in an amount to be proven at trial.

### SECOND CAUSE OF ACTION
### VIOLATIONS OF THE ROSENTHAL FAIR DEBT COLLECTIONS ACT
### California Civil Code Section 1788
### (Against All Defendants)

51.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

52.    Bank of America is a "debt collector" within the meaning of California Civil Code section 1788.2(c) because Bank of America sent mortgage bills to Plaintiff and to the Class, Plaintiff and the Class made their mortgage payments to Bank of America, Bank of America

- 9 -

1  accepted those payments, and Bank of America made demands for payment after default by

2  sending letters, making telephone calls, and other attempts to collect mortgage payments.

3       53.     The monies allegedly owed by Plaintiff are a "debt" within the meaning of

4  California Civil Code section 1788.2(d) because Plaintiff's and the Class's promissory notes

5  secured by their real property are "money, property or their equivalent which is due or owing or

6  alleged to be due or owing from a natural person to another person."

7       54.     As alleged herein, and as set forth in detail above, Defendants have committed

8  violations California's Rosenthal Fair Debt Collection Practices Act, California Civil Code

9  section 1788 ("RFDCPA"), which incorporates by reference, and requires compliance with, the

10  provisions of the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692.  The

11  FDCPA and, therefore, the RFDCPA, prohibits, without limitation: making false, deceptive, or

12  misleading representation or means in connection with the collection of any debt, 15 U.S.C. §

13  1692e and using unfair or unconscionable means to collect or attempt to collect any debt, 15

14  U.S.C. § 1692f.

15       55.     Bank of America made a false, deceptive, or misleading representation to Plaintiff,

16  and the Class, when it represented to Plaintiff, and the Class, that if Plaintiff, and the Class,

17  accepted new loan balances that include interest, default fee, and other fees, Bank of America

18  would provide Plaintiff, and the Class, with permanent modifications.

19       56.     Bank of America used unfair or unconscionable means to collect or attempt to

20  collect any debt when it attempted to collect on the original amount due under the promissory

21  note, including taking or threatening to take nonjudicial action to effect dispossession, after

22  permanent modification.

23       57.     Pursuant to California Civil Code sections 1788.30 and 1788.17, Plaintiff, and the

24  Class, is entitled to recover actual damages sustained as a result of Bank of America's violations

25  of the RFDCPA. Such damages include, without limitation, monetary losses and damages, and

26  emotional distress suffered, which damages are in an amount to be proven at trial. In addition,

27  pursuant to California Civil Code sections 1788.30 and 1788.17, because Bank of America's

28  violations of the RFDCPA were committed willingly and knowingly, Plaintiff, and the Class, is

- 10 -

1  entitled to recover penalties of at least $1,000 per violation as provided for in the Act.

2      58.      Pursuant to California Civil Code sections 1788.30 and 1788.17, Plaintiff, and the

3  Class, is entitled to recover all attorneys' fees, costs, and expenses incurred in the bringing of this

4  action.

5                                  **THIRD CAUSE OF ACTION**
                        **VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW**
6                          **California Business and Professions Code section 17200**
7                                       **(Against all Defendants)**

8      59.      Plaintiff incorporates by reference the preceding paragraphs of this Complaint as

9  though fully set forth herein.

10     60.      California Business and Professions Code section 17200 et seq. ("Section 17200"),

11 also known as the California Unfair Competition Law ("UCL"), prohibits acts of "unfair

12 competition," including any "unlawful, unfair, … or deceptive business act or practice" as well as

13 "unfair, deceptive, untrue or misleading advertising."

14     61.      Defendant's conduct was unlawful in that violates:

15          (a)      the RFDCPA as described herein.

16     62.      Defendant's conduct was unfair in that:

17          (a)      it failed to ensure it is properly applying, after transfer, payments due under

18                   an applicable loan modification agreement or other applicable payment

19                   modification agreement;

20          (b)      it failed to properly considers applicable loan modification or forbearance

21                   agreements before demanding or collecting amounts due;

22          (c)      it refused to accept timely payments and threatening foreclosure

23                   proceedings against Subject Property when Plaintiff was current under the

24                   modification.

25     63.      As a direct and proximate result of defendants' unlawful and unfair business

26 practices, Plaintiff have been injured in fact and have lost money or property due to, without

27 limitation, the threatened initiation of the foreclosure process despite having unpaid and deferred

28 interest, fees, escrow advances and other costs added to the outstanding principal balance.

FIRST AMENDED CLASS ACTION COMPLAINT

64.     As a direct and proximate result of Defendants' unlawful and unfair business practices, defendants have been unjustly enriched and should be ordered to make restitution to Plaintiff and the Class pursuant to Business and Professions Code sections 17203 and 17204.

65.     The unlawful and unfair business practices of Defendants described herein present a continuing threat to Plaintiff and the Class; and will not cease doing so unless and until forced to do so by this Court. Defendants' conduct is causing and will continue to cause irreparable injury to Plaintiff and the Class unless enjoined or restrained.

66.     Plaintiff seeks restitution and injunctive relief pursuant to Business and Professions Code section 17203, including but not limited to: an Order requiring that Defendants correct their accounting of the Loan and their reporting of the Loan to the credit reporting agencies; restitution of wrongful charges of fees and interest on the Loan; and such other and further relief as the Court may deem proper and just.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of themselves and all others similarly situated, pray that the Court grant the following relief:

1.     For an Order certifying this case as a class action and appointing Plaintiff and their counsel to represent the Class members;

2.     That the Court assume supplemental jurisdiction over all state law claims, pursuant to 28 U.S.C. § 1367;

3.     For judgment in favor of Plaintiff and against Defendants on all claims;

4.     For preliminary and permanent injunctive relief prohibiting Defendants and their employees, agents, and persons acting with them or on their behalf, from transferring ownership of or further encumbering the Plaintiff's residence;

5.     For an Order for specific performance of its contractual obligations;

6.     For an Order to enforce Defendants' promises made in the Modification Agreement under the doctrine of promissory estoppel;

7.     For an Order requiring that Defendants correct their accounting of the Loan and their reporting of the Loan to the credit reporting agencies;

1     8.     For actual damages according to proof;

2     9.     For statutory damages according to proof;

3     10.     In the alternative to damages, for an order that Defendant be ordered to make

4  restitution to Plaintiff pursuant to California Business and Professions Code § 17203;

5     11.     For any award to Plaintiff of the costs of this action, including the fees and costs of

6  experts, together with reasonable attorney's fees, costs and expenses;

7     12.     For all other relief at law or in equity that Plaintiff is entitled to by law that this

8  Court deems just and proper.

9                                   Respectfully submitted,

10

11  Dated: January 6, 2014                     LAW OFFICE OF ERIC ANDREW MERCER

12                                   By:  /s/ Eric Andrew Mercer

13                                        ERIC ANDREW MERCER
                                          Attorney for Plaintiff
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**DEMAND FOR JURY TRIAL**

2          Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff, hereby requests a trial by jury

3  as to each and every claim for which they are so entitled.

4

5  Dated: January 6, 2014                    LAW OFFICE OF ERIC ANDREW MERCER

6                                            By:  /s/ Eric Andrew Mercer

7                                               ERIC ANDREW MERCER
                                                Attorney for Plaintiff
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that this document filed through the ECF system will be sent

3

electronically to the registered participants as identified on the Notice of Electronic File (NEF)

4

and paper copies will be sent to those indicated as non-registered participants on January 6, 2014.

5

6

Dated: January 6, 2014                    LAW OFFICE OF ERIC ANDREW MERCER

7

By: _/s/ Eric Andrew Mercer_

8

ERIC ANDREW MERCER
Attorney for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 15 -

**Exhibit 1**



THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY
INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Date: June 27, 2012

ANGELLA WEBB
5600 BRAODWAY , SACRAMENTO, CALIFORNIA 95820

Re: Loan Modification Agreement - Loan Number: 

Dear ANGELLA WEBB:

You are a valued customer of Specialized Loan Servicing LLC, and we appreciate your business. A modification of your loan has
been approved. There are tremendous benefits of a loan modification, some of which may include a lower or fixed interest rate and a
lower monthly payment, which will result in a current loan status. Please refer to the attached documentation for the specific terms
related to your loan modification.

Additionally, an escrow account for payment of real estate taxes and insurance premiums may be required in conjunction with your
loan modification. If required, an estimated monthly escrow amount is included below. The initial estimated amount is calculated
based upon the tax and insurance information obtained while in the modification process, and may change. An escrow analysis
statement referencing the actual payment and effective date will be mailed to you within four weeks of the modification being
completed. SLS will draw on the escrow account to pay your real estate taxes and insurance premiums as they come due. Please note
that your escrow payment amount will adjust if your taxes, insurance premiums and/or assessment amounts change, so the amount of
your monthly payment that SLS must place in escrow will also adjust, as permitted by law. This means that your monthly payment
may change. An analysis of this account will be performed annually.

Due to the timing of your tax and insurance payments, we have determined that there is a shortage of funds in your escrow account in
the amount of $2,043.74. You may pay this amount over a 5-year (60 months) period. If you wish to pay the total shortage now in a
lump sum, please contact us. Paying this amount now in a lump sum will reduce your new monthly mortgage payment.

In order to take advantage of these updates, please review the agreement, complete the signature, and remit certified funds.

- If you are signing this document electronically, you do not need to return a copy. Your certified check in the amount of
  $ 1,422.48 may be sent to SLS using one of the following payment options.
- If you received this document by mail and physically signed it, please return a copy to SLS with your certified check in the
  amount of $1,422.48. Your signed documents and certified funds may be sent to one of the two addresses referenced below.

| **Regular Mail** | **Overnight Mail** | **Western Union** |
|---|---|---|
| Specialized Loan Servicing LLC | Specialized Loan Servicing LLC |  |
| P.O. Box 636005 | 8742 Lucent Blvd, Suite 300 | Code city "PAYSLS" |
| Littleton, CO 80163 | Highlands Ranch, CO 80129 | State "CO" |
| Attn: Cashiering Department | Attn: Cashiering Department | |

If you are a customer in bankruptcy, a written approval from your attorney acknowledging acceptance of these terms must be received
in order to complete this process. Please return the approval letter to SLS using one of the addresses referenced above.

**Certified Check Breakdown**

| | |
|---|---|
| Modification Fee: | $ 0.00 |
| Estimated Escrow: | $ 374.68 |
| P&I Payment: | $ 1,047.80 |
| Cash Contribution: | $0.00 |

The modification of your loan will be completed and go into effect when both the signed document and certified funds are received
by SLS on or before June 30, 2012. SLS will continue normal servicing of this loan until documents and funds are received. If your
loan is delinquent or will become delinquent prior to this time, collections efforts will continue, including foreclosure activity.
Payment history will continue to be reported to the credit bureaus during the loan modification process. You must continue to make
your scheduled payments in order to avoid negative credit reporting.

You may wish to consult your attorney or financial advisor to review the terms of the modification; we encourage you to return it to us as soon as possible. Please contact us at 1-800-306-6059 if you have any questions.

As a result of this Modification Offer, debt under your Mortgage Note may have/has been forgiven and there may be tax consequences to you. Please consult your tax advisor.

Sincerely,

Keith #10438
Loan Resolution Department
Specialized Loan Servicing LLC (SLS)
8742 Lucent Blvd, Ste 300
Highlands Ranch, CO 80129
Ph: 1-800-306-6059
Fax: 1-720-241-7526

Calls will be monitored and recorded for quality assurance purposes. If you do not wish for your call to be recorded, please notify the Customer Assistance Associate when calling.

Please be advised that if the Agreement is altered in any way that the modification agreement will be rejected and the offer to modify your mortgage loan will be voided. All terms of the original Note and Deed of Trust will be immediately effective, including any default status of the loan.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt, please be advised this letter constitutes neither a demand for payment of the captioned debt nor a notice of personal liability to any recipient hereof who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy. If you have questions, please contact our Customer Care Center at 1-800-306-6057.

**Exhibit 2**

Investor #: 5009
Borrower: ANGELLA WEBB

# LOAN MODIFICATION AGREEMENT AMORTIZING
### (Providing for Step Interest Rate)

This Loan Modification Agreement ("Agreement"), made and effective this 27th day of June, 2012, between ANGELLA WEBB ("Borrower") and Specialized Loan Servicing LLC, as servicer for the current Note Holder ("Servicer"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") dated August 24, 2006 and recorded in SACRAMENTO county, CALIFORNIA in which the property is located, and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at 5600 BRAODWAY , SACRAMENTO, CALIFORNIA 95820, the real property described being set forth as follows:

See Legal description referenced in the original security instrument.

Whereas, Borrower and Servicer desire to modify the interest rate as further outlined in Paragraph 2 of this Agreement, for a limited period of time to assist the Borrower.

For purposes of this Agreement, unless the context clearly requires otherwise, all capitalized terms which are used but not otherwise defined herein shall have the respective meanings assigned to such terms in the Note or Security Instrument.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.   As of June 1, 2012, the amount payable under the Note and the Security Instrument (the "Modified Unpaid Principal Balance") is U.S. $346,007.81 consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized. Such balance is calculated by taking the Unpaid Principal Balance and adding (i) any amounts capitalized, (ii) any escrow advances, (iii) any corporate advances (amounts expended by the Servicer on behalf of the Borrower) and (iv) any unpaid interest, and subtracting from that amount any amounts that the Servicer has agreed to write off. As of June 1, 2012, interest in the amount of $0.00 has not been paid on the Borrower's loan ("Delinquent Interest"). The Delinquent Interest has not been included in the calculation of the Modified Unpaid Principal Balance. Borrower promises to pay such Delinquent Interest, if not sooner paid, in full on the Balloon Maturity Date.

2.   Borrower promises to pay the Modified Unpaid Principal Balance, plus interest to the order of the Note Holder. During the first period of this Agreement, interest will be charged on the Unpaid Principal Balance, at the yearly rate of 2.000%, from the Modification Date and Borrower promises to pay monthly payments of principal and interest in the amount of $1,047.80 beginning on July 1, 2012.

During the second period, interest will be charged at the yearly rate of 3.000% from March 1, 2015, and Borrower shall pay monthly payments of principal and interest in the amount of $1,227.01 beginning on April 1, 2015.

During the final period and continuing thereafter until the Balloon Date, interest will be charged at the yearly rate of 3.875% from March 1, 2016 and Borrower shall pay monthly payments of principal and interest in the amount of $1,392.52 beginning on April 1, 2016 and shall continue the monthly payments thereafter on the same day of each succeeding month until principal and interest are paid in full.

In conjunction with this Modification, a Balloon Maturity Date has been added or changed.

If on December 1, 2036, ('Balloon' or 'Modified Balloon Date'), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Balloon Maturity Date.

The final calculated monthly payments above are based on an amortization period longer than the Balloon or Modified Balloon Date and will therefore not fully repay the loan at the Balloon or Modified Balloon Date, which will result in a Balloon Payment.

3.   The amount deferred through this modification agreement is $ 0.00 consisting of the amount(s) loaned to Borrower by the current or previous Note Holder and any interest capitalized to date, with a breakdown as follows:

     (a)   Unpaid Interest: $0.00
     (b)   Corporate Advances: $0.00
     (c)   Principal: $0.00

4.   Additionally, the amount of items deferred in previous modification(s) on this loan is $0.00, with a breakdown as follows:

     (a) Prior deferred interest:   $0.00
     (b) Prior deferred principal:   $0.00

Deferred Items: The portion of the outstanding principal balance, corporate advances and/or unpaid interest that is referenced above has been deferred. The deferred amount will not accrue interest. The deferred amount will remain due and owing but is not required to be paid until the loan is paid in full or if not sooner paid, on the Maturity Date or Modified Maturity Date. The deferred amount is not a forgiveness of partial debt and will not be reported as such.

5.   Place of Payment. Borrower must make the monthly payments at P.O. Box 105219, Atlanta, GA 30348-5219, Attn: Remittance Processing or such other place as Servicer may require.

6.   Intentionally left blank.

7.  If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Servicer's prior written consent, Servicer may require immediate payment in full of all sums secured by the Security Instrument. If Servicer exercises this option, Servicer shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Servicer may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

8.  Borrower also will comply with all other covenants, agreements, riders to (except those specifically deleted herein) and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

(a)     all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, and

(b)     all terms and provisions of any adjustable rate rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

9.  Borrower understands and agrees that:

(a)     All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)     All covenants, agreements, stipulations, and conditions in the Note and Security Instrument including riders to the Security Instrument except those specifically deleted herein, shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Servicer's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law.  Also, all rights of recourse to which Servicer is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Servicer.

(c)     Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)     All costs and expenses incurred by Servicer in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Servicer.

(e)   Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Servicer, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f)   Borrower acknowledges he/ she/ they have been given the opportunity to review this Agreement with legal counsel of his/her/their own choice prior to execution of the Agreement.

10.   **In the event there has been a prior bankruptcy or an ongoing bankruptcy, notwithstanding anything in this Agreement to the contrary, including without limitation the provisions in the preceding paragraph, Borrower and Servicer acknowledge and agree that Borrower's personal liability under the Note has been discharged in a Chapter 7 or a Chapter 13 Bankruptcy or is subject to an ongoing bankruptcy proceeding that this Agreement shall not be construed as (1) an attempt by Note Holder to collect the underlying debt from Borrower's personal assets; (2) as a violation of the post-discharge injunction set forth in 11 U.S.C. Section 524; and/or a violation of the automatic stay provisions of 11 U.S.C. Section 362. On the contrary, Borrower and Note Holder desire to modify the underlying loan terms in order to facilitate Borrower's full compliance with the terms of the Note and Security Instrument.**

In Witness Whereof, Servicer and Borrower have executed this Agreement.

(Seal)  Date:

ANGELLA WEBB

Specialized Loan Servicing LLC
As Servicer

By:                              (Seal)

Name:  Susan Miller
Title:  Vice President

Date: