DANIEL J. MULLIGAN, SBN 103129
JENKINS MULLIGAN & GABRIEL LLP
10085 Carroll Canyon Road, Ste. 210
San Diego, CA 92131
Telephone:   (415) 982-8500
Facsimile:   (415) 982-8515
Email: dan@jmglawoffices.com

ERIC ANDREW MERCER, SBN 248707
LAW OFFICE OF ERIC ANDREW MERCER
770 L Street Suite 950
Sacramento, CA 95814
Telephone:   (916) 361-6022
Facsimile:   (916) 361-6023
Email: mercerlegal@me.com

Attorneys for Plaintiff, ANGELLA S. WEBB, and the putative class

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| ANGELLA S. WEBB, individually, on behalf of all others similarly situated, and on behalf of the general public;<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A.; and DOES 1 through 10, inclusive;<br><br>Defendants. | Case No. 2:13-CV-02006-MCE-AC<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**<br><br>Date: January 15, 2016<br>Time: 9:00 a.m.<br>Courtroom: 7<br>Judge: Hon. Morrison C. England, Jr. |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on January 15, 2016 at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 7 of the United States District Court for the Eastern District of California, before the Honorable Morrison C. England, Jr., Plaintiff, Angella S. Webb, on behalf of herself and all those similarly situated, will and do hereby move an Order certifying the Class defined below under Rule 23 of the Federal Rules of Civil Procedure.

> All California residential mortgage loan borrowers who, since 2009, were offered, accepted and performed under the terms of permanent loan modifications, which modifications Bank of America later failed to honor after transfer from another servicer.

Plaintiffs make this motion on the grounds that their claims meet the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3), as set forth in the accompanying Memorandum. This Motion will be based on this Notice and the accompanying Memorandum and supporting declarations, testimony, exhibits, and other evidence; the Court's file in this action; and such other argument or evidence as may be presented prior to or at the hearing on the Motion.

Dated: November 12, 2015

Respectfully submitted,

LAW OFFICE OF ERIC ANDREW MERCER

By: */s/ Eric Andrew Mercer*
ERIC ANDREW MERCER
Attorney for Plaintiffs

LAW OFFICE OF ERIC ANDREW MERCER

ii

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ................................................................................................................ iii

**TABLE OF AUTHORITIES** ........................................................................................................ iv

I. INTRODUCTION ..................................................................................................................1

II. PROCEDURAL HISTORY ...................................................................................................1

III. STATEMENT OF FACTS AND UNDERLYING LAW ......................................................2

   A. Loan Modification Transfer Problems Are Widespread..................................................2

   B. Bank Of America Policies And Procedures Relating To This Action.............................3

   C. Plaintiff's Experience........................................................................................................5

IV. CLASS DEFINITION ............................................................................................................6

V. ARGUMENT ..........................................................................................................................6

   A. Legal Standard: Class Certification Is A Procedural Inquiry Into Whether Rule 23 Is Satisfied Such That Plaintiff May Proceed In A Representative Capacity To Determine Defendant's Liability To A Class As A Whole .................................................................6

   B. The Class Is So Numerous That Joinder Of All Members Is Impracticable ...................7

   C. There Are Questions Of Law And Fact Common To The Class .....................................8

   D. Plaintiff's Claims Are Typical Of The Claims Of The Class ........................................10

   E. Plaintiff Will Fairly And Adequately Protect The Interests Of The Class ....................11

   F. The Questions Common To Class Members Predominate Over Any Questions Affecting Only Individual Members .................................................................................................11

   G. A Class Action Is Superior To Other Available Methods For Fairly And Efficiently Adjudicating The Controversy......................................................................................12

VI. CONCLUSION.....................................................................................................................13

# TABLE OF AUTHORITIES

**CASES**

*Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952 (9th Cir. Cal. 2013) ................................................... 9

*Am. Pipe & Constr. Co. v. Utah*,
    414 U.S. 538 (1974) ........................................................................................................... 7

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    133 S. Ct. 1184 (U.S. 2013) ............................................................................................... 6

*Arnold v. United Artists Theatre Circuit, Inc.*,
    158 F.R.D. 439 (N.D. Cal. 1994) ....................................................................................... 7

*Blackie v. Barrack,*
    524 F. 2d 891, n.17 (9th Cir. Cal. 1975) ............................................................................ 7

*Bradley v. Networkers Int'l, LLC*, 211 Cal. App. 4th 1129 (Cal. Ct. App. 2012), as modified on
    denial of reh'g 2013 Cal. App. LEXIS 9 (Jan. 8, 2013) ..................................................... 9

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal.4th 163 (1999) ...................................................................................................... 11

*Charlebois v. Angels Baseball, LP*,
    2011 U.S. Dist. LEXIS 71452 (C.D. Cal. June 30, 2011) ................................................. 7

*Esquivel v. Bank of Am., N.A.,* 2013 U.S. Dist. LEXIS 153683 (E.D. Cal. Oct. 25, 2013) .............. 12

*Gaudin v. Saxon Mortg. Servs.*, 297 F.R.D. 417 (N.D. Cal. 2013) .............................................. 9, 10

*Hanlon v. Chrysler Corp.*,
    150 F. 3d 1011 (9th Cir. Cal. 1998) ....................................................................... 8, 10, 12

*In re Wells Fargo Home Mortg.*, 571 F.3d 953 (9th Cir. Cal. 2009) ............................................. 12

*Palmer v. Stassinos*,
    2009 WL 86705, at *10 (N.D. Cal. 2009) ......................................................................... 7

*Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993) .................................................................. 7

*Roshandel v. Chertoff*,
    554 F. Supp. 2d 1194 (W.D. Wash. 2008) ................................................................... 8, 10

*Stearns v. Ticketmaster Corp.*,
    655 F. 3d 1013 (9th Cir. Cal. 2011) .................................................................................. 10, 11
*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (U.S. 2011) .................................................................................................. 6, 8
*Wolin v. Jaguar Land Rover North Am., LLC*,
    617 F. 3d 1168 (9th Cir. Cal. 2010) ......................................................................................... 12

**OTHER AUTHORITIES**

Rule 23 ................................................................................................................................ 1, 3, 4, 10
Rule 23(a) ........................................................................................................................................ 4
Rule 23(a)(1) ................................................................................................................................... 4
Rule 23(a)(2) ................................................................................................................................... 6
Rule 23(a)(3) ................................................................................................................................... 7
Rule 23(a)(4) ................................................................................................................................... 8
Rule 23(b)(3) ....................................................................................................................... 4, 8, 10

## I. INTRODUCTION

Plaintiff had a loan serviced by Bank of America when she began having financial difficulties and failed to make several payments in 2009. Bank of America transferred the servicing of her hoan to Specialized Loan Servicing ("SLS"). Plaintiff then applied for and obtained a permanent loan modification to her home loan through SLS, which she made payments on for over a year. When the servicing rights were transferred to Bank of America N.A. ("Bank of America") in July 2013, it refused to recognize the permanent modification and instead attempted to collect on amounts due under the original mortgage, from 2009.

Plaintiff then filed the complaint ("Complaint") in this action on September 25, 2013, for breach of contract, unfair debt collection, and claims under California's Unfair Competition Law ("UCL"). In short, this action pertains to borrowers who received permanent loan modifications, performed on those modifications for twelve or more months, were transferred to Bank of America for servicing, Bank of America failed to honor or recognize those loan modifications, and, instead, initiated collection communication by mail and by telephone attempting to collect amounts not owed under the permanent modifications.

Plaintiff is a California homeowner subjected to exactly this type of treatment. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs move to certify a class of similarly situated California borrowers as stated herein. The Class should be certified in this case because after obtaining and performing on a permanent modification for twelve or more months, each member was subjected to Bank of America's same policies and procedures, and/or lack thereof, regarding ensuring the transfer of loan modification information along with a servicing transfer.

## II. PROCEDURAL HISTORY

Plaintiff Angella Webb filed this putative class action against Defendant on September 25 3, 2013 alleging four causes of action (1) breach of contract – modification agreement, (2) Violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, (3) Violations of the Rosenthal Fair Debt Collection Practices Act, California Civil Code § 1788 and (4) California's Unfair Competition Law ("UCL"), California Business and Professions Code section 17200. Dkt. No. 1.

This Court granted in part and denied in part Defendant's motion to dismiss Plaintiff's Complaint on December 23, 2013 with leave to amend finding that Plaintiff stated an Rosenthal Act claim and UCL claim. Dkt. No. 16.

Plaintiff filed his First Amended Complaint on January 6, 2014. Dkt. No. 17. Then, Defendant filed its Answer on January 24, 2014. Dkt. No. 18. The parties then began discovery in earnest. Plaintiff now brings the present Motion for Class Certification.

### III.  STATEMENT OF FACTS AND UNDERLYING LAW

#### A.  Loan Modification Transfer Problems Are Widespread

Failure to honor permanent modifications after a transfer of servicing is a widespread problem recognized by several federal agencies. Recognizing the problem, the Consumer Protection Financial Bureau ("CFPB") issued, on January 17, 2013, serving rules that require servicers to maintain policies and procedures that are reasonably designed to achieve the objectives of facilitating the transfer of information during mortgage servicing transfers. Specifically, the CFPB states that:

> A transferee servicer must have policies and procedures reasonably designed to ensure, in connection with a servicing transfer, that the transferee servicer receives information regarding any loss mitigation discussions with a borrower, including any copies of loss mitigation agreements. Further, the transferee servicer's policies and procedures must address obtaining any such missing information or documents from a transferor servicer before attempting to obtain such information from a borrower. For example, assume a servicer receives documents or information from a transferor servicer indicating that a borrower has made payments consistent with a trial or permanent loan modification but has not received information about the existence of a trial or permanent loan modification agreement. The servicer must have policies and procedures reasonably designed to identify whether any such loan modification agreement exists with the transferor servicer and to obtain any such agreement from the transferor servicer.

RJN, Exh. 1.

On August 19, 2014, the CFPB issued another compliance bulletin on mortgage servicing transfers. RJN, Exh. 2. This bulletin specifically requires that servicers develop policies and procedures to "flag" all approved loss mitigation plans. *Id*. at 3. This CFPB bulletin specifically identifies issues related to fair debt collection and transfers of servicing:

> The FDCPA imposes obligations on servicers to the extent they act

2
PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

as debt collectors within the meaning of the FDCPA. Among other obligations, the FDCPA requires that within five days after the initial communication with a borrower in connection with the collection of any debt, a debt collector must send the borrower a notice including the amount of the debt, the creditor's name, the borrower's right to request verification of the debt, and other required information. CFPB examiners have identified a number of entities that failed to send the notices within five days of initial contact and some entities that failed to send them at all. The FDCPA also prohibits deceptive representations, the use of unfair or unconscionable means, and harassing or abusive conduct in debt collection.

*Id*. at 9 (internal citations omitted). Despite the CFPB's clear guidance on this issue, Bank of America, as a matter of common practice, continues to fail to ensure it is properly applying, after transfer, payments due under an applicable loan modification agreement and fails to properly obtain or consider applicable loan modification agreements before demanding or collecting amounts due, as explained below.

Indeed, problems with transfers of modification information with a servicing transfer continue to be an industry-wide problem. On October 29, 2014, the Special Inspector General for the Troubled Asset Relief Program issues a report entitled, "Homeowners Can Get Lost in the Shuffle And Suffer Harm When Their Servicer Transfers Their Mortgage But Not the HAMP Application or Modication." RJN., Exh. 3 (the "SIGTARP Report"). The SIGTARP report notes that complaints relating to servicing transfers have increased and identified the following as a problem:

> For those already in HAMP, servicing transfers that are not honored, or payments that are misapplied due to missing paperwork or miscoding of HAMP data during the transfer, could result in their mortgages reverting to the original terms that they previously could not afford. The large number of homeowner complaints identified real harm that Treasury must rapidly and aggressively respond to before the problem escalates even further.

*Id*. at 6.

**B.  Bank Of America Policies And Procedures Relating To This Action**

Two years later after the CFPB instructed loan servicers to enact policies and procedures to ensure proper transfer of loan modification information, Bank of America still fails to have a specific policy to ensure the transfer of loan modification information at the same time as a transfer of servicing. Mercer Decl., Exh. 2. Deeds Depo., 19:17- 20:2, 31:19-32:1, 37:2-6, 40:13-20,

42:10-14, 54:21-55:1, 55:25-56:8, 58:6-12, 60:7-10, 85:10-17 (repeated testimony about a lack of procedure and policy to ensure transfer of loan modification information when boarding loans after transfer of servicing to Bank of America).  Indeed, the CFPB has specifically instructed servicers to flag incoming loans that have been permanently modified but Bank of America, still, fails to do so:

> Q. (BY MR. MULLIGAN) Okay. In that manual process as you've described it, is there anything -- or was -- excuse me -- was there anything in place that would elicit the fact that a loan modification had been put in place?
> A. No, because we were not uploading a modification flag to the system.
> Q. Do you now?
> A. No.

*Id*. at 55:25-56:8. Moreover, even where loan are reboarded after twelve months of consecutive payments at a subservicer, Bank of America still fails to flag loan modifications to differentiate those loan from other ways in which a borrower can become current for twelve consecutive months:

> Q. In terms of the BONY settlement group, you've testified that all of those loans being re-boarded had to be current for at least 12 months, correct?
> A. Yes, 12 consecutive months.
> Q. Is there any way that is marked to indicate how they were made current; for example, maybe payments were made through bankruptcy, maybe the borrower simply paid it all off, maybe there was a loan modification? Any flag in the system that tells you that?
> A. I would say no.

*Id*. at 73:21-74:5.

> Q.  And can you describe for me, in nontechnical detail, how the fact of the loan modification is flagged in the system when it's boarded?
> A. The loan modification from the subservicer is not flagged in iSeries when it is boarded.

Mercer Decl., Exh. 3, Whitt Depo., 43:12-16.

In short, Bank of America fails to flag loans that have been permanently modified even when reboarding loans that were delinquent, transferred to a subservicer, performed for twelve months, and were transferred back to Bank of America.  *See* RJN, Exh. 4 (showing a total of

165,928 loans transferred and 65,554 reperforming loans transferred by to Bank of America).

Failure to implement a policy and procedures to ensure the transfer of loan modification information leads Bank of America to collection under the original note, as problem identified in the SIGTARP Report.  Bank of America compares new information obtained from a servicer with information already contained in its servicing systems:

> Q. (BY MR. MULLIGAN) Okay. You've told me, I believe, that you compare the new information from the servicer you're taking the loan from, where the loan is being re-boarded, and you compare that with the updated information that Bank of America has stored on the loan when it was servicing, correct?
>
> A. Correct.

Deeds Depo., 53:13-19.  But this can lead to problems where there has been a loan modification, like in the case here, because Bank of America needs a copy of the loan modification agreement to confirm all of the terms of the loan used to "derive" the new payment amount. Deloney Depo., 163:9-165:24.

### C. Plaintiff's Experience

Plaintiff's experience with Bank of America demonstrates the failure to implement policies and procedures leads to violates of the Rosenthal Act and California's UCL.

Plaintiff Angela Webb ("Plaintiff" or "Ms. Webb") applied for and received a permanent modification under the Home Affordable Modification Program ("HAMP") in July 2012. Mercer Decl, Exh. 1.  After paying the modified payments for over a year, Specialized Loan Servicing, LLC ("SLS") transferred the servicing rights to Bank of America in July 2013.  Mercer Decl., Exh. 5, Webb Depo., 28:6-10.  When Ms. Webb attempted to pay the modified amount in August 2013, her payment was returned to her.  Mercer Decl., Exh. 4, Deloney Depo, 122:18-24.  Bank of America then refused to honor Ms. Webb's modification even though she sent them a copy until after this action had been filed.  Webb Depo., 25:6-8, 43:10-20.   Instead, Bank of America told Ms. Webb that she owed a different amount than what was owed under the modification and that they would proceed with foreclosure if she did not pay the improper amount requested.  *Id*.  25:19-22, 26:2.

These actions violate the Rosenthal Act and California's UCL because Bank of America

attempted to collect amounts not owed and also because Bank of America threatened foreclosure, which was a legal action they could not take as Ms. Webb was current on her modification agreement.

## IV. CLASS DEFINITION

In light of the above facts ascertained during discovery, by this motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs seek to certify the following class of California residential mortgage loan borrowers:

> All California residents who, since 2009, were offered, accepted and performed under the terms of permanent loan modifications, which modifications Bank of America later failed to honor after transfer from another servicer

As explained below, Plaintiff meets the Rule 23 requirements for class certification.

## V. ARGUMENT

### A. Legal Standard: Class Certification Is A Procedural Inquiry Into Whether Rule 23 Is Satisfied Such That Plaintiff May Proceed In A Representative Capacity To Determine Defendant's Liability To A Class As A Whole

Under Rule 23, a member of a class may sue in a representative capacity for all class members if certain elements are satisfied. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-1195 (U.S. 2013) ("*Amgen*"). Under Rule 23(a), the basic elements of class certification are numerosity, commonality, typicality, and adequacy of representation, each of which is addressed in detail below. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548 (U.S. 2011) ("*Dukes*"). Where, as here, the plaintiff makes "individualized monetary claims" on behalf of the Class, he must additionally satisfy the predominance and superiority elements set forth in Rule 23(b)(3), also addressed in detail below. *See Dukes* at 2558.

The underlying merits of the case are not considered at the class certification stage except to the extent necessary to determine whether Rule 23 is satisfied. *See Amgen* at 1194-1195. Although class certification is by no means a "mere pleading standard," it is the elements of Rule 23 (and not the merits) that the party seeking class certification must prove under a "rigorous analysis" standard. *See Dukes* at 2551-2552. "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen* at 1194-1195. On the contrary, except as

necessary to comply with Rule 23, the court should treat the well pled allegations of the complaint as true, and defer consideration of the merits until the motion for class certification has been resolved. *See* 3 Newberg & Conte, Newberg on Class Actions § 7:26, p. 81 (4th ed. 2002); *Blackie v. Barrack,* 524 F. 2d 891, 901, n.17 (9th Cir. Cal. 1975); A*m. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547-548 (1974).

**B.     The Class Is So Numerous That Joinder Of All Members Is Impracticable**

Rule 23(a)(1) is satisfied when the proposed Class is so numerous that "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Whether joinder [is] impracticable depends on the facts and circumstances of each case and does not, as a matter of law, require the existence of any specific minimum number of class members." *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994). "Nonetheless, courts have recognized that the numerosity requirement is generally satisfied when the class is in excess of forty members." *Charlebois v. Angels Baseball, LP*, 2011 U.S. Dist. LEXIS 71452 (C.D. Cal. June 30, 2011) (listing cases).

Courts have not required evidence of exact class size or the identities of class members to satisfy the requirements of Rule 23(a)(1). *See Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). A finding of numerosity may be supported by common-sense assumptions. *Palmer v. Stassinos*, 2009 WL 86705, at *10 (N.D. Cal. 2009). "Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." Newberg On Class Actions § 3:3 (4th ed. 2002). Here, the evidence before the Court, demonstrates that the number of class members is sufficiently numerous that the joinder of all class members is impracticable.

Bank of America has identified 701,388 California mortgage loans for which servicing rights were transferred to Bank of America after September 25, 2009. Mercer Decl., Exh. 6, 1:20-23. Further, Bank of America does not capture data regarding loan modifications made prior to a transfer of servicing on loans where Bank of America previously performed no servicing on the loan. Mercer Decl., Exh. 3, Whitt Depo., 15:19-16:5. However, Bank of America is able to track California mortgage loans that were reboarded to Bank of America after September 25, 2009 after the borrower and the prior servicer agreed to the terms of a permanent loan modification

LAW OFFICE OF ERIC ANDREW MERCER

(hereinafter, the "Reboarded Modified Loans"). Mercer Decl., Exh. 6, 2:10-16.  As such, Bank of America identified 625 Reboarded Modified Loans were transferred to Bank of America after September 25, 2009.  *Id*.  Of those, 109 had a "negative transaction" applied to the account within the first month after transfer.  Mercer Decl., Exh. 6, 3:24-4:9.

Bank of America references a number of possible reasons for a "negative transaction" other than improper attempts to collects amounts not due after a permanent modification, none of which stand close scrutiny.  *Id*.  Loans are only reboarded after a borrower is current on their payments for at least twelve months of continuous payments from the prior servicer.  Mercer Decl., Exh. 2, Deeds Depo., 18:3-12;  34:7-10; 73:21-24.  Therefore, borrowers have been current on their loan modifications for over year are not likely to suddenly default upon transfer to Bank of America.  Rather, much more likely, Bank of America failed to transfer the loan modification information due to a lack of policy and procedure to ensure such a transfer.  *See* Section III, B above.  Though underinclusive, Plaintiff estimates the class size to be at least 109.

However, the class size is probably larger. Bank of America admits that it has reboarded approximately 7,200 at of May 31, 2015 and that sixty percent of those are loans that have been permanently modified.  Mercer Decl., Exh. 3, Whitt Depo., 42:5-21 and 46:21-25.  Indeed, Mr. Whitt's estimately of 7,200 reboarded loans may be well under the actual amount as Bank of America has reported that reperforming loans transferred to Bank of America number 67,601 as of September 2015 (if sixty percent of these transfers are permanent modifications, then the number of California class member is likely to be closer to 10,000).

At any rate, whether 109 or 10,000, the numerosity requirement is met here.

**C.      There Are Questions Of Law And Fact Common To The Class**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Commonality under Rule 23(a)(2) – as distinguished from predominance under Rule 23(b)(3), discussed below – is liberally construed. *See Hanlon v. Chrysler Corp*., 150 F. 3d 1011, 1019-1020 (9th Cir. Cal. 1998).  It exists when there are underlying facts or legal theories common throughout the class, even if the common facts support different legal theories or common legal theories rest on different facts.  *See id.*  This does not, however, mean that every question of

LAW OFFICE OF ERIC ANDREW MERCER

law or fact must be common to the class; The commonality "element can be met by raising a single common issue that is central to the class." *Roshandel v. Chertoff*, 554 F. Supp. 2d 1194, 1203 (W.D. Wash. 2008), citing *Slaven,* 190 F.R.D. at 655; *see Dukes* at 2556 ("We quite agree that for purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do"). The key inquiry is whether class treatment will "generate common answers apt to drive the resolution of the litigation." *Wal-Mart*, 131 S. Ct. at 2551.

    Here, a common legal question that is presented and susceptible to classwide determination is whether Bank of America's failure to ensure the transfer of loan modification information prior to demanding payment from borrowers violates the Rosenthal Act and California's UCL.

    The Ninth Circuit recently analyzed whether adoption of a uniform policy that violates California law would be sufficient for commonality under Rule 23(a)(2). *See Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952 (9th Cir. Cal. 2013). In *Abdullah*, the Ninth Circuit determined that a uniform policy that violates wage and hour laws and a common defense is "apt to drive the resolution of the litigation." *Id*. at 963. In *Abdullah*, the Ninth Circuit also cites a California case, which found that commonality was met where "[t]he lack of a meal/rest break policy and uniform failure to authorize such breaks are matters of common proof." *Bradley v. Networkers Int'l, LLC*, 211 Cal. App. 4th 1129 (Cal. Ct. App. 2012), as modified on denial of reh'g 2013 Cal. App. LEXIS 9 (Jan. 8, 2013).

    The present action is like a case where the Northern District of California granted certification of a class of borrower who made loan modification application under HAMP. *See Gaudin v. Saxon Mortg. Servs.*, 297 F.R.D. 417 (N.D. Cal. 2013). The *Gaudin* Court granted a motion to certify a class of California borrowers:

> who entered into HAMP TPPs with Saxon effective on or before October 1, 2009, and made at least three trial period payments, but did not receive HAMP loan modifications.

*Id*. at 431.

    Therefore, *Gaudin* only considered the narrow issue of HAMP TPP's. Similarly, here, Plaintiff brings this action only on the narrow issue on whether, by failing to ensure the transfer of permanent loan modification information prior to demanding payment from borrowers, Bank of

America violated the Rosenthal Act and California's UCL.

The *Gaudin* Court found significant common questions of law and fact concerning the nature and scope of the TPP. *Id*. at 425.  Among these questions were the following:

> (1) "Saxon's uniform practices, including its admission that it did not consider the TPP legally binding"; (2) whether the TPP is an enforceable contract, once it has been fully executed; and if it became binding when executed, "whether the Class may recover some or all of their trial payments, nominal damages, or any other remedies un-der California law", id. at; and, with respect to Plaintiffs' UCL claim, "whether the public would likely be deceived,"

*Id*. (internal citations removed).

In the present action, there are significant common question of law and fact concerning the nature of Bank of America's response to loan modification transfer, including the following:

> (1)  BANA's uniform practices including failing to ensure the transfer of loan modification information prior to demanding payment from borrowers after transfer of servicing; and
>
> (2)  whether such uniform practices resulted in unfair debt collection under the Rosenthal Act and California's UCL.

Therefore, commonality is met.

**D.     Plaintiff's Claims Are Typical Of The Claims Of The Class**

Rule 23(a)(3) requires that the representative plaintiff's claim be typical of the Class. "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Stearns v. Ticketmaster Corp.,* 655 F. 3d 1013, 1019 (9th Cir. Cal. 2011) ("*Ticketmaster*"). "The typicality requirement looks to whether the claims of the class representatives [are] typical of those of the class, and [is] satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Id.* (internal quotations omitted). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F. 3d at 1020.

Here, the typicality requirement is satisfied because Plaintiff submitted oral and written applications for loan modification under HAMP and Bank of America failed to provide any notices that comply with ECOA in response to those applications within 30-day of the submission of the application or otherwise.

10
PLAINTIFF'S NOTICE OF MOTION AND  MOTION FOR CLASS CERTIFICATION

### E. Plaintiff Will Fairly And Adequately Protect The Interests Of The Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4)."To satisfy the adequacy requirement, plaintiffs must show that their interests are not antagonistic to those of the class and that they are able to prosecute the action vigorously through qualified and competent counsel." *Roshandel*, 554 F. Supp. 2d at 1204.

Both adequacy prongs are met here: Plaintiff's interest in this litigation is aligned with those of the Class she represents because he seeks all relief for the same injury; her attorneys are experienced in class action and consumer mortgage litigation; none of them have any actual or potential conflicts with the Class. *See* Mulligan Decl. at ¶ 6-7; Mercer Decl. at ¶ 6-7.

### F. The Questions Common To Class Members Predominate Over Any Questions Affecting Only Individual Members

The predominance element of Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "The predominance inquiry … asks whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Ticketmaster,* 655 F.3d at 1019 (internal quotations omitted). "The focus is on the relationship between the common and individual issues." *Id.* The analysis "begins, of course, with the elements of the underlying cause of action." *Id.* at 1020.

Here, common issues predominate Plaintiff's Rosenthal Act claim because Bank of America's uniform failure to implement a policy and procedure to ensure the transfer of loan modification information prior to demanding payment from the borrower after a transfer of servicing, here, subjects Bank of America to liability to the entire class and subjects it to statutory damages in an amount an amount not to exceed the lesser of up to $ 500,000 or 1 percent of net worth of the company. Cal. Civ. Code § 1788.17 (incorporating 15 U.S.C. § 1692k); see also Palmer v. Stassinos, 233 F.R.D. 546, 548 (N.D. Cal. 2006)(federal Fair Debt Collection Practices Act class action remedies available under the Rosenthal Act).  Therefore, individual actual damages determinations are unnecessary and a classwide statutory damages award divided evenly between the class members is appropriate.

Common issues predominate the Plaintiff's "unlawful" practices claim under the UCL for

the same reasons. The unlawful prong of the UCL borrows violations of other laws and treats them as independently actionable UCL violations. *See Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999). Common issues predominate on the unlawful practices claim because it is predicated on a Rosenthal Act violations, as discussed above. Thus, the alleged violations of the Rosenthal Act violate the UCL as a matter of law, triggering the UCL remedies.

Common issues also predominate in Plaintiffs' "unfair practices" claim under the UCL. The Complaint alleges three "unfair" practices relating to failing to honor a permanent modification. FAC at ¶ 62 (a), (b), and (c)(Dkt. at 17). Failure to honor a permanent modification is grounds for a UCL claim. *See Esquivel v. Bank of Am., N.A.,* 2013 U.S. Dist. LEXIS 153683 (E.D. Cal. Oct. 25, 2013).

It is an abuse of discretion for the district court to rely on uniform policies "to the near exclusion of other relevant factors touching on predominance." *In re Wells Fargo Home Mortg.*, 571 F.3d 953 (9th Cir. Cal. 2009). Such is not the case here, however. Bank of America's uniform lack of a policy to ensure the transfer of loan modification information after a servicing transfer is not the only evidence of predominance. Classwide statutory damages issues also predominate over individual actual damages claims. Finally, matters of common proof, such as the sending of improper collections letters and collection calls also predominate over individual issues.

### G. A Class Action Is Superior To Other Available Methods For Fairly And Efficiently Adjudicating The Controversy

Rule 23(b)(3) also requires a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The factors considered in determining superiority include: (A) the interests of class members to individually pursue separate actions, (B) if class members have already commenced litigation concerning the controversy at issue, (C) the desirability of converging the matter into one action, (D) the manageability of a class action. The focus is on the benefits of the class mechanism in terms of uniformity and efficiency, as compared to "alternative mechanisms of dispute resolution." *Hanlon*, 150 F. 3d at 1023.

Where, as here, "recovery on an individual basis would be dwarfed by the cost of litigating

on an individual basis, this factor weighs in favor of class certification." *Wolin v. Jaguar Land Rover North Am., LLC*, 617 F. 3d 1168, 1175 (9th Cir. Cal. 2010). Also, in this case, the fact that individual claims "would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs" weighs heavily in favor of class action. See *Hanlon*, 150 F. 3d at 1023.

The bottom line is that the Class consists of financially distressed people who by definition could not afford their mortgages. They have no realistic ability to litigate this case against Bank of America individually. Thus, a class action is superior, not only based on judicial economy, but because it truly represents the only option for the Class members to obtain meaningful recourse on their claims.

## VI.   CONCLUSION

The requirements of Rule 23 are satisfied in this case. Plaintiff therefore respectfully requests that the Court certify the Class, appoint Plaintiff as the Class Representatives, appoint his attorneys as Class Counsel, and order that Class notice be provided.

Dated: November 12, 2015                    Respectfully submitted,

                                            LAW OFFICE OF ERIC ANDREW MERCER


                                            By: */s/ Eric Andrew Mercer*
                                                ERIC ANDREW MERCER
                                                Attorney for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF) and paper copies will be sent to those indicated as non-registered participants on November 12, 2015.

Dated: November 12, 2015          LAW OFFICE OF ERIC ANDREW MERCER

                                  By: */s/ Eric Andrew Mercer*
                                  ERIC ANDREW MERCER
                                  Attorney for Plaintiff